IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANN M. WEST, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART )<br>)<br>Defendant. ) | CIVIL ACTION NO. 2:04cv0881-M<br>[WO] |

**MEMORANDUM OPINION AND ORDER**

Claimant Ann M. West ["West"] filed this action seeking review of a final decision by the defendant ["Commissioner"] (Doc. # 1) pursuant to Title II of the Social Security Act, 42 U.S.C. § 405(g) (2004). Upon review of the record and the briefs submitted by the parties, the court concludes that the Commissioner's decision should be affirmed.

**I.   FACTS AND PROCEDURAL HISTORY**

West, who is 63 years old and worked as a legal secretary for the Alabama Education Association ["AEA"] from 1980 to 2001, contends that she became disabled on 15 June 2001, the day she retired (R. 64, 491-93). Although West alleges that she suffers from depression as well as the long-term effects of chemotherapy for breast cancer, for which she underwent a "left modified radical mastectomy" (R. 172), the primary cause of her allegedly disabling condition is back pain (R. 29, 495-98).

West's back problems began in 1994 (R. 82), though her medical records do not document treatment before April 1995, when Dr. Patrick Ryan ["Dr. Ryan"] diagnosed a

herniated disk in her lumbar spine at the L4-5 level and a "broad disk bulge versus herniation" in her lumbosacral spine at the L5-S1 level (R. 130-37; 148). Dr. Ryan performed a laminectomy, but West continued to complain of and be treated for pain. As part of that treatment, Dr. Roger Williams Kemp ["Dr. Kemp"] administered an epidural injection ("Caudal RACZ") and noted in a follow-up visit on 13 March 1996 that West's condition was "improving" (R. 249).

West's medical records indicate that she was not seen again until April 1998, when Dr. Ryan referred her to Dr. Larry W. Epperson ["Dr. Epperson"] for continued "low back pain, numbness and burning in the lower extremities" (R. 152). She described the pain radiating to her right leg as feeling "like a 'red hot poker.'" *Id.* Dr. Epperson ruled out "lumbar disc disease with failed back syndrome" and determined that she suffered from, simply, "chronic pain" (R. 153). An MRI revealed "narrowing of the L5-S1 intervetebral space" and "[o]bvious anterior herniation of the L5-S1 intervertebral disc" (R. 154).

Her next visit did not occur until October of that same year, when Dr. Kemp diagnosed her with "failed back syndrome" and "right lumbar radiculitis" (R. 248). He again performed an epidural injection, at which time he noted "epidural nerve root fibrosis" (R. 247). After a follow-up visit in March 1999, Dr. Kemp indicated that the injection was successful, noting "complete resolution of central lumbar back pain and . . . complete resolution of shooting pain in the right leg" (R. 244). An injection the following month preceded a notation in June 1999 that her pain was improving but continuing, nonetheless, while she was off her medications per her doctor's order (R. 243). Dr. Kemp noted that her

radiculitis was stable. *Id.* At that point, West had been diagnosed with breast cancer (R. 155).

In October 1999, West underwent surgery for her cancer and, thereafter, monthly chemotherapy treatments through mid-May 2000 (R. 156, 172-3, 322, 326, 333-406). Notes from Dr. Keith A. Thompson ["Dr. Thompson"], who supervised her chemotherapy, indicate that West suffered from no complications other than some skin irritation. *Id.* Despite the fact that West was not receiving treatment for her back pain during this time, Dr. Thompson specifically noted that she denied "any bone pain, joint pain or back pain." *Id.*[1]

In February 2001, approximately nine months after her final chemotherapy treatment, West again sought help from Dr. Kemp, who then diagnosed her with bulging discs at L5-S1 and L3-4, the latter of which, he noted, was accompanied by "bilateral facet and ligamentous hypertrophy . . . without spinal stenosis or foraminal encroachment" (R. 208). He also noted that the scarring from her previous back surgery was "minimal." *Id.* The next month, Dr. Kemp assessed West's condition as "failed back syndrome, right lumbar radiculitis and lubmar degenerative disc disease" (R. 236), and in April, he administered an epidural steroid injection (R. 186, 200).

In June 2001, Dr. Kemp performed a "discography", after which he diagnosed West

---

[1] The records do not distinguish between pain she might have been experiencing as the result of her previous condition and pain, perhaps different in nature, that might be caused by the cancer treatment. The plausibility of this possible distinction is evidenced by the fact that in July 2001, during a period of increased doctor visits for her back pain, West saw Dr. Thompson again for what appears to be a final checkup, and he noted that she denied "any bone pain, joint pain or back pain" (R. 338).

with "L4-5 grade IV-V degenerative disk with annular fissure and central lateral bulge with no pain re-creation" and L5-S1 grade V degenerative disk with foraminal stenosis and spondylitis with no pain re-creation" (R. 186). A CT scan confirmed this diagnosis (R. 190), but Dr. Kemp the next month noted, "Disabled - place in off work status" (R. 234).

From the end of July through mid-August 2001, West underwent physical therapy (R. 215-32). An optimistic outlook from her physical therapist, Charles Michael Ellis ["Ellis"], who predicted that she would be pain-free within four weeks (R. 224-25), proved unrealistic. Upon discharging her from treatment, Ellis noted that West "was progressing slowly secondary to still experiencing radicular signs and symptoms down the right lower extremity and still having pain in the bilateral lower extremities as well as soreness in the bilateral lower extremities" (R. 216).

While in physical therapy, West did not pursue additional medical treatment. In October 2001, she again saw Dr. Kemp with complaints of knee and back pain, with the latter radiating into her legs (R. 233). He noted that her heels were numb and that she was "disabled". *Id.* He also provided an instruction to draft a letter stating that she "is not able to perform the duties of as [sic] a admin. assist. She is permanently disabled secondary to Breast Cancer [sic] and prev [sic] failed laminectomy" (R. 465).

That same day, West was seen at Southern Orthopaedic Surgeons, which included the following puzzling note in the record of her visit: "Ms. West is a 59 [year old female] with history of a few weeks of left knee pain that's worse with activity. She's had no numbness or tingling or radiating pain associated with this *or is a chronic back pain patient*" (R. 267)

(emphasis added). She was diagnosed with left knee pain and pedal edema, and her x-rays indicated "mild arthritis" in her left knee. *Id.*

At her next doctor's visit approximately five months later, in March 2002, Dr. Kemp noted that West had been experiencing periodic pain averaging six and peaking at nine on a 10-point scale (R. 460). Approximately two weeks later, he performed a "lumbar diskography", which led Dr. Kemp to diagnose "degenerative disk disease L5-S1, bilateral lumbar radiculitis, L4-5 grade 5 degenerative disk with typical axial and left leg pain. L5-S1 grade 5 degenerative disk with axial pain only, loss of disk height and spondylosis without significant foraminal stenosis" (R. 453).

In May, he noted "marked improvement of [her] lumbar back pain," which West had estimated to be "50-60%" better (R. 448). This was followed by another discography in June "for selective nerve root block and interdiscal steroid" (R. 447). In August, another discography was scheduled, but the records do not reflect whether the procedure was performed (R. 443). Finally, in August 2003, Dr. Kemp again saw West for back pain, noting that the "pain has gotten worse since she ran out of Celebrex" (R. 440).

In March 2002, Dr. Lois Schulman ["Dr. Schulman"] performed a consultative examination, during which she noted that West "had a normal range of motion but she had a lot of pain getting up from the flexed position" (R. 409). After reviewing West's medical records and performing a physical examination, Dr. Schulman diagnosed her with "[l]ower back pain, status post herniated discs as stated in the medical records, with radiculopathy on examination" (R. 410). In her functional assessment based on an eight-hour workday, Dr.

5

Schulman limited West to standing or walking four hours with "frequent" breaks; sitting for four hours with "frequent" breaks; lifting or carrying no more than five pounds; and bending, stooping, and crouching, "which she was able to do," only when "absolutely necessary" (R. 410-11). She further noted that "[n]o assistive devices are necessary" and that West has no manipulative, visual, communicative or environmental workplace limitations (R. 411).

Notably, a state agency medical consultant, Dr. Van Hayne, disagreed with Dr. Schulman's assessment, finding that the limitations she suggested were excessive and unsupported by the record (R. 412-21). According to the specialist, West can occasionally lift or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk approximately 6 hours in an 8-hour workday; sit approximately 6 hours in an 8-hour workday; frequently climb ramps and stairs but never ladders, ropes or scaffolds; and frequently stoop, kneel and crouch but only occasionally crawl. *Id.*[2]

West's application for benefits was denied initially (R. 34-38), and a hearing before Administrative Law Judge Steven L. Carnes ["ALJ"] resulted in an unfavorable decision (R. 17-27).[3] The Social Security Administration's ["SSA"] Office of Hearings and Appeals declined West's request for review (R. 5-7) thereby making the ALJ's opinion the final

---

[2]As the court has already noted, West also claims to suffer from depression, but West does not challenge any of the administrative findings regarding her alleged mental limitations (Doc. # 16, p. 3); therefore, it is unnecessary to discuss these records, and the court simply incorporates by reference the Commissioner's relevant description and findings.

[3]The ALJ held two hearings, the first of which compelled the him to order additional psychological examinations and a subsequent hearing (R. 518-19). The second hearing concerned only West's alleged mental impairments, which, as noted in footnote two *supra*, are only marginally relevant to the matter before the court.

decision of the Commissioner. West then filed this timely lawsuit.

## II. STANDARD OF REVIEW

The district court's review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." ***Miles v. Chater***, 84 F. 3d 1397, 1400 (11th Cir. 1996) (citing ***Bloodsworth v. Heckler***, 703 F.2d 1233, 1239 (11th Cir. 1983)). The court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied," ***Kelley v. Apfel***, 185 F.3d 1211 (11th Cir. 1999) (citing ***Graham v. Apfel***, 129 F. 3d 1420, 1422 (11th Cir. 1997)).[4] This is true despite the fact that "[s]ubstantial evidence may even exist contrary to the findings of the ALJ." ***Barron v. Sullivan***, 924 F.2d 227, 230 (11th Cir. 1991). "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." ***Miles***, 84 F. 3d at 1400 (citations omitted).

---

[4]In ***Graham v. Apfel***, 129 F. 3d at 1422, the Court of Appeals stated that:

> Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. ***See Richardson v. Perales***, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

## III.   DISCUSSION

*A.   Standard for Determining Disability*

An individual who files an application for Social Security disability benefits must prove that he is disabled.  *See* **20 C.F.R. § 416.912 (2004)**.  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A) (2004)**.

The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that he is disabled.  *See* **20 C.F.R. § 416.920**.  The ALJ must evaluate the claimant's case using this sequential evaluation process, ***Ambers v. Heckler***, 736 F.2d 1467, 1469 (11th Cir. 1984); ***Williams v. Barnhart***, 186 F. Supp. 2d 1192, 1195 (M.D. Ala. 2002).  The steps are as follows:

1. If the claimant is working or engaging in substantial gainful activity, he is not disabled.  If the claimant is not working or engaging in substantial gainful activity, however, the court must consider whether the claimant has a severe impairment.

2. If the claimant does not have a severe impairment, he is not disabled.  A severe impairment is defined as a condition that precludes one from performing basic work-related activities. If the claimant has a severe impairment, the court must then consider whether the impairment has lasted or is expected to last for more

      than 12 months.

3. If a claimant's impairment has lasted or is expected to last for a continuous period of 12 months or more and it is either included on or equivalent to an impairments listed in Appendix I of the regulations, the claimant is disabled. Otherwise, the ALJ must go on to step four of the evaluation sequence.

4. If it is determined that the claimant can return to previous employment, considering his residual functional capacity ["RFC"] and the physical and mental demands of the work that he has done in the past, the claimant will not be considered disabled. If it is determined that the claimant cannot return to previous employment, the ALJ must continue to step 5 in the sequential evaluation process.

5. If, upon considering the claimant's RFC, age, education, and past work experience, the ALJ determines that the impairments determined do not preclude the claimant from performing a significant number of jobs that are available in the national economy, the claimant will not be considered disabled within the meaning of the Social Security Act. Therefore, she/he will not be entitled to benefits pursuant to 42 U.S.C. §§ 401 *et seq.* and/or 42 U.S.C. § 1381. If, however, it is determined that there are not a significant number of jobs the claimant can perform available in the national economy and the impairment meets the duration requirement, the claimant will be considered disabled.

*See* §§ 20 C.F.R. 404.1520(a)-(f), 416.920(a)-(f) (2005).

B.   ***Application of the Standard: the ALJ's Findings***

After meticulously discussing the legal standards and evidence in the record, the ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act as of the alleged onset date.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date.

3. The claimant has the following "severe" impairments: status post herniated nucleus pulposus at L4-5; status post laminectomy and discectomy; disc bulge at L5-S1; lumbar radiculitis; status post mastectomy for carcinoma of the left breast; failed back syndrome; degenerative disc disease with spondylosis; and major depressive disorder, recurrent, moderate.

4. The claimant's impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. The claimant's assertions concerning the ability to work are not credible.

6. The claimant retains the residual functional capacity to perform the exertional demands of a restricted range of sedentary work in that she can sit for up to 4 hours in an 8-hour day, stand/walk for up to 4 hours in an 8-hour day, requires a sit/stand option, and has the following abilities and restrictions: lift/carry no more than 5 pounds; continuously use hands for simple grasping, pushing/pulling of arm controls and fine manipulation; never use legs for pushing/pulling of leg controls;

       occasionally stoop, crouch, kneel, crawl, climb, and balance; frequently reach; occasionally work around unprotected heights, moving machinery, operate motor vehicle equipment, exposure to marked extremes in temperature and humidity; experiences a moderate degree of pain; moderate limitations in the ability to respond appropriately to supervisors; moderate limitations in the ability to respond appropriately to co-workers; moderate limitation in the ability to respond appropriately to supervisors; moderate limitation in the ability to respond appropriately to customers or other members of the general public; mild limitation in the ability to use judgment in simple one or two step work-related decisions; moderate limitation in the ability to use judgment in detailed or complex work-related decisions; moderate limitation in the ability to deal with changes in a routine work setting; no limitation in the ability to understand, remember, and carry out simple, one and two-step instructions; mild limitation in the ability to understand, remember, and carry out detailed or complex instructions; moderate limitation in the ability to maintain attention, concentration or pace for periods of at least two hours; mild limitation in the ability to maintain social functioning; and no limitation in the ability to maintain activities of daily living.

7. The claimant cannot perform any past relevant work.

8. The claimant is vocationally classified as an individual of advanced age at all times relevant hereto.

9. The claimant has a high school education.

10. The claimant has acquired skills that will transfer to other jobs within the residual functional capacity set out above.

11. If the claimant had the exertional capacity to perform the full range of sedentary work, 20 C.F.R. 404.1569 and Medical Vocational Rule 201.07, 20 C.F.R. Part 404, Table No. 1 to Appendix 2 of Subpart P would direct a conclusion that the claimant is "not disabled."

> 12. Although the claimant's additional non-exertional limitations do not allow up to perform [sic] the full range of sedentary work, using the above-cited rule as a framework for decision-making and the vocational expert's testimony, there are a significant number of jobs in the regional or national economies which the claimant could perform. Examples of such jobs are: General Clerk, with 3,100 jobs regionally and 155,000 jobs nationally; Receptionist, with 1,200 jobs regionally and 55,000 jobs nationally; and Cashier, with 4,500 jobs regionally and 225,000 jobs nationally.
>
> 13. The claimant is not disabled within the meaning of the Social Security Act.

(R. 26-27). Thus, West fails at step five because the ALJ determined that, based on her RFC, age, education and work experience, West is capable of performing a "significant number of jobs in the regional or national economies." *Id.*

West disagrees and argues, generally, that the ALJ's decision is not supported by substantial evidence. Specifically, West argues that the ALJ did not adequately weigh Dr. Kemp's opinion that West is disabled and that neither the ALJ's RFC determination nor his decision to discredit West's subjective complaints is supported by the record (Doc. # 16). For the reasons set forth *infra*, West's arguments lack merit.

### C.  *Treating Physician's Opinion*

West first argues that "[t]he ALJ erred in evaluating Dr. Kemp's opinion by failing to discuss the medical evidence of record insofar as whether Dr. Kemp's opinion, as to the nature and severity of Ms. West's impairments, should have been afforded controlling

weight" (Doc. # 16, p. 8). West does not indicate to which opinions she is referring, with the notable exception of Dr. Kemp's conclusory statement that West is disabled and unable to perform the functions of her job, which West concedes is not entitled to controlling weight (Doc. # 16, p. 8-9). *See* 20 C.F.R. § 1527(e)(1)-(3) (2005) (including "opinions that [the claimant] is disabled" among those "issues reserved to the Commissioner" and stating that those opinions are not entitled to "any special significance"); **Sykes v. Apfel**, No. Civ. A. 99-0983-P-L, 2001 WL 102986 (S.D. Ala. 2001); Soc. Sec. Rul. 96-5p, 61 Fed. Reg. 34,471 (July 2, 1996).

Clearly, the ALJ's decision, to the extent that it relates to West's back condition, was based primarily, if not exclusively, on Dr. Kemp's treatment records, which were consistent with other physicians' records regarding West's back problems. He thoroughly reviewed all of Dr. Kemp's records and adopted each of his diagnoses, which were essentially the only medical opinions Dr. Kemp offered.[5] Therefore, West's argument is simply unfounded.[6]

---

[5]"Medical opinions are statements from physicians . . . that reflect *judgments* about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 1527(a)(2) (2005) (emphasis added). Although Dr. Kemp noted the plaintiff's subjective complaints, he made no "judgments" regarding them. Nor did he offer any predictions as to the progress of her condition or opinions regarding her capabilities or restrictions, aside from his conclusion that she was disabled. Notably, his conclusion in this regard was based in part on West's cancer, but West's records reveal no complications from her illness or treatment, and, as West points out, Dr. Kemp is a pain specialist not an oncologist.

[6]West's argument that the ALJ should have recontacted Dr. Kemp for clarification of his opinion that West is disabled is likewise without merit. As West herself notes, the regulations require the Commissioner to recontact treating physicians when the medical evidence is "inadequate for [the Commissioner] to determine whether [the claimant] is disabled." 20 C.F.R.

### D.     *The ALJ's RFC Assessment*

West argues that the ALJ erred by ignoring a limitation Dr. Schulman imposed on West's ability to "bend, stoop, and crouch", which she said West could do "only when absolutely necessary" (R. 410, 411). Giving great weight to Dr. Schulman's opinion, the ALJ concluded that she could perform these actions "occasionally" (R. 26), which West herself defines as "*from very little* to up to one third of the time" (Doc. # 16, p. 14) (emphasis added). Considering that an RFC represents the *most*, not the least, a claimant is capable of doing, 20 C.F.R. § 404.1545(a) (2005), the ALJ's finding that West could "occasionally" perform the acts in question simply does not conflict with Dr. Schulman's limitation (R. 23).[7]

### E.     *Application of the Pain Standard*

West argues that the ALJ's discrediting of her subjective complaints is not supported by the recorded. Thus, although she does not refer to or describe the Eleventh Circuit's two-part test for evaluating a claimant's subjective complaints, her argument makes clear that she

---

§ 404.1512(e)(1) (2005). Other than argue generally that the record does not support the ALJ's decision and point out a minor discrepancy in a note on one of Dr. Kemp's medical records (R. 233) that is clarified in a later duplication (R. 465), West fails to demonstrate how the record is insufficient, and she offers no evidence that medical records are missing.

[7]West also argues that the ALJ ignored a limitation on West's ability to work around unprotected heights and hazardous machinery (Doc. # 16, p. 15). This limitation, imposed by a non-examining medical consultant from a state agency, conflicts with Dr. Schulman's opinion, which stated, "There are no visual, communicative, or environmental workplace limitations" (R. 411). The opinion of a nonexamining physician is entitled to little weight when it is contradicted by an examining physician's opinion. ***Sharfarz v. Bowen***, 825 F.2d 278, 279-80 (11th Cir. 1987). Therefore, the ALJ's well-reasoned preference for Dr. Schulman's opinion does not constitute legal error.

is challenging the ALJ's application of the pain standard.

The so-called pain standard requires evidence of an underlying medical condition and either "objective medical evidence that confirms the severity of the alleged pain arising from that condition or . . . that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." ***Holt v. Sullivan***, 921 F.2d 1221, 1223 (11th Cir. 1991). No weight need be given to subjective complaints that do not satisfy the pain standard. *See*, *e.g.*, ***Butler v. Barnhart***, 347 F. Supp. 2d 1116, 1123 (M.D. Ala. 2003). Nevertheless, the ALJ must provide "explicit and adequate" reasons for discrediting the plaintiff's complaints. ***Wilson v. Barnhart***, 284 F.3d 1219, 1225 (11th Cir. 2002).

At the administrative hearing, West testified that she was in constant pain that she described as more often than not a 9 ½ on a 10-point scale (R. 495-96). Furthermore, her right leg "feels like it has a red hot poker inside of it all the time" (R. 497). Nevertheless, she stated that she could lift 10 pounds, stand a total of two hours, sit for a total of up to four hours and walk a total of two hours in an eight hour work day (R. 500-501). On an average day, West is awake from around 9:00 a.m. until 2:00 a.m. the following morning (R. 501-02). She prepares breakfast and spends the day watching television (7-8 hours per day) or reading "while sitting" (R. 501-04).

After accurately discussing the SSA's and Eleventh Circuit's requirements for evaluating subjective complaints, the ALJ offered the following as his reasons for discrediting West's complaints:

15

> I find that the claimant's testimony of disabling pain and functional restrictions is disproportionate to the objective medical evidence. The record does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of pain and limitations alleged. There are no diagnostic studies to show abnormalities that could be expected to produce such severe symptoms. The physical findings in the record do not establish the existence of neurological deficits, significant weight loss, muscle atrophy, or other observable signs often indicative of protracted pain of the intensity, frequency, and severity alleged.
>
> Furthermore, despite the allegedly disabling pain and functional limitations, the claimant's own hearing testimony confirms that she can perform some sedentary work activities

(R. 24).

Thus, the ALJ provided explicit, logical reasons for finding that West's complaints were unsupported by the objective medical evidence and contrary to her own testimony regarding her capabilities. His findings are reasonable and well-supported by the record.[8]

A thorough review of the record as well as West's arguments lead unavoidably to the conclusion that she is simply dissatisfied with the ALJ's view of the facts. Although reasonable minds may draw different conclusions, this court simply may not reinterpret the record when, as in this case, the ALJ properly applied the law, thoroughly examined the record, drew reasonable, well-supported conclusions, and fully explained his rationale.

---

[8]Contrary to the suggestion in West's brief, the ALJ did not find that she does not experience pain on a daily basis. In fact, his RFC and the hypothetical questions posed to the vocational examiner at the hearings considered the fact that West experiences a moderate degree of pain (R. 24, 514-16, 528-30).

## IV. CONCLUSION

Therefore, it is hereby

ORDERED that the final decision of the Commissioner be and is AFFIRMED.

DONE this 1st day of September, 2005.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE